# In the United States Court of Federal Claims

No. 12-382L
Filed: June 24, 2013

* * * * * * *

| | | |
|---|---|---|
| BILOXI MARSH LANDS CORP. and LAKE EUGENIE LAND & DEVELOPMENT INC., | * * | Fifth Amendment Taking; Inverse Condemnation; Statute of Limitations; Erosion; Mitigation; *Dickinson* principle; *Mildenberger*; *Banks*; *Applegate* |
| Plaintiffs, | * | |
| v. | * | |
| UNITED STATES OF AMERICA, | * | |
| Defendant. | * | |

* * * * * * *

*Camilo Kossy Salas*, Salas & Co., L.C., New Orleans, LA, for plaintiffs.

*Joshua Pratt Wilson*, United States Department of Justice, Washington, DC, for defendant.

**ORDER AND OPINION**

This is an inverse condemnation action. Plaintiffs allege a taking of their properties adjacent to the Mississippi River Gulf Outlet (MRGO). The MRGO is a 76-mile-long channel between the Gulf of Mexico and New Orleans. The channel was authorized by Congress and is managed by the Army Corps of Engineers. Over the years, the channel has eroded well past the original servitudes granted to the Government for this purpose. Plaintiffs allege this erosion has effected a taking of their lands – around 150,000 acres of Biloxi Marsh estuary, a value of at least $30 million plus future erosion costs.

Defendant filed a motion to dismiss for lack of jurisdiction, contending that the six-year statue of limitations has run on plaintiffs' taking claim. The majority of the erosion took place between 1968 and 1988, and a predictable rate of future erosion was known to plaintiffs by 1988, according to the Government.

Plaintiffs contend that their claims had not stabilized by 2006, six years before they filed this action. They do not propose a date certain for stabilization. Plaintiffs' alternative contention is that defendant's efforts to mitigate the erosion gave them "justifiable uncertainty" about the extent of

their takings claims, essentially tolling the statute of limitations. *See Banks v. United States*, 314 F.3d 1304, 1310 (Fed. Cir. 2003).

The six-year statute of limitations is jurisdictional in this court. *John R. Sand & Gravel Co. v. United States*, 457 F.3d 1345, 1354 (Fed. Cir. 2006); *see* 28 U.S.C. § 2501. Claims generally accrue when events giving rise to the Government's alleged liability have occurred and the claimant is or should be aware of their existence. *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1577 (Fed. Cir. 1988). When the alleged taking is gradual, as in an erosion case or a flooding case, accrual occurs when the condition has "stabilized." *United States v. Dickinson*, 331 U.S. 745, 749 (1947) (discouraging a strict application of accrual principles in cases involving Fifth Amendment takings by continuous physical processes). The Court of Appeals for the Federal Circuit ruled recently on the application of the stabilization doctrine:

> [T]he touchstone for any stabilization analysis is determining when the environmental damage has made such substantial inroads into the property that the permanent nature of the taking is evident and the extent of the damage is foreseeable. The obligation to sue arises once the permanent nature of the Government action is evident, regardless of whether damages are complete and fully calculable.

*Mildenberger v. United States*, 643 F.3d 938, 946 (Fed. Cir. 2011) (citations omitted).

Plaintiffs argue that stabilization has not yet occurred in this case because the MRGO continues to affect their property. The surface width of the channel has increased fifteen feet on average each year since the completion of the channel in 1968.

The expectation that erosion will occur at the rate of fifteen feet per year cuts both ways, however. Arguably, plaintiffs knew of the permanent nature of the taking and could foresee the damage at some point before 2006, given ongoing damage to their lands at a consistent rate. The *Mildenberger* rule suggests that plaintiffs' claims likely accrued before 2006, six years before they filed this lawsuit. However, the Government's promises to mitigate might have rendered plaintiffs' claims uncertain and therefore timely. *See Banks*, 314 F.3d at 1310.

The Federal Circuit has ruled that the Government's efforts to mitigate damage to plaintiffs' land can render the predictability and permanence of the extent of damage "justifiably uncertain." *Id.* This uncertainty results in a delay of the permanence of a taking and therefore a delay in stabilization and accrual of plaintiffs' claims. *Id.*

Defendant contends that the facts of this case are distinguishable from those of *Banks* and its predecessor *Applegate v. United States*, 25 F.3d 1579 (Fed. Cir. 1994). For example, the Government did not promise mitigation to plaintiffs here, according to defendant. Because the mitigation programs did not target plaintiffs' land specifically, they were too broad to establish justifiable uncertainty. However, the appeals court emphasized in *Banks* that the presence of a legally binding promise or duty is not necessary for delaying stabilization. *Banks*, 314 F.3d at 1309 (citing *Applegate*, 25 F.3d at 1583). Rather, the inquiry should be when the permanent nature of the

taking is evident. *Id.* (citing *Boling v. United States*, 229 F.3d 1365, 1372 (Fed. Cir. 2000)). The landowners' justifiable uncertainty about the permanency of the taking delays stabilization. *Id.*

The problem of erosion along the MRGO has been known for decades. The Federal Coastal Wetlands Planning, Protection and Restoration Act of 1990 was enacted to restore 120,000 acres of wetlands in coastal Louisiana, some of those along the MRGO. Other reports over the years recognized the need for stabilization of the MRGO, including a 2000 EPA report. A 2004 Army Corps study stated that "rapid action" was required to prevent additional erosion of the MRGO channel banks. As late as 2008, the Corps published plans to "physically modif[y] the MRGO channel and restor[e] areas affected by the channel," among other things. The Corps recommended appropriation of $108 million to restore a land bridge, the banks of the MRGO, and the associated wetlands. In 2008, the Corps finally recommended total closure of the MRGO. These reports and recommendations to restore the banks of the MRGO might have rendered plaintiffs' claims uncertain. If justifiable, such uncertainty could mean that plaintiffs' claims might accrue later, for jurisdictional purposes.

Plaintiffs are not clearly without our jurisdiction. Application of the tests from *Mildenberger* and *Banks* may offer plaintiffs a possibility of surviving defendant's motion to dismiss. However, whether the statute of limitations has run depends on questions of predictability and mitigation. Defendant's motion to dismiss is DENIED, without prejudice to its right to raise this jurisdictional issue at a later date. Counsel may wish to brief the matters raised by this Order or request an evidentiary hearing. Counsel will file a joint status report on or before July 8.

                                                  s/ Robert H. Hodges, Jr.
                                                  Robert H. Hodges, Jr.
                                                  Judge