# In the United States Court of Federal Claims

Nos. 12-382, 14-3, 15-710, 15-711 (consolidated)
(Filed:  27 October 2021)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| BILOXI MARSH LANDS | * | |
| CORPORATION, *et al.*, | * | |
| | * | Motion for Reconsideration; Doctrine of |
| Plaintiffs, | * | Justifiable Uncertainty; Statute of |
| | * | Limitations; Takings; Erosion; |
| v. | * | Fifth Amendment; Doctrine of Stabilization |
| | * | |
| THE UNITED STATES, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Camilo K. Salas III*, Salas & Co., L.C., with whom was *Ashley Liuzza*, Stag Liuzza, L.L.C., both of New Orleans, LA, for plaintiffs.

*Joshua P. Wilson*, Trial Attorney, with whom were *Elizabeth McGurk*, Trial Attorney, *William J. Shapiro*, Trial Attorney, and *Jean E. Williams*, Acting Assistant Attorney General, Environment & Natural Resources Division, Natural Resources Section, Civil Division, Department of Justice, and *Borislav Kushnir*, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, all of Washington, DC, for the government.

## OPINION AND ORDER

Plaintiffs Biloxi Marsh Lands Corporation, Lake Eugenie Land & Development, Inc., Borgnemouth Realty Co., Limited, the Livaudais Company, L.L.C., Terre Aux Boeufs Land Co., Inc., and Vincent Marshlands, L.L.C. (collectively, "plaintiffs") allege the United States took their property in southeast Louisiana for public use through inverse condemnation without just compensation, in violation of the United States Constitution, federal statutes, and certain servitudes granted by plaintiffs and assigned to the United States.  In 2018 and 2019, the parties filed cross-motions for summary judgment on the issue of whether plaintiffs' claims are barred by the six-year statute of limitations for claims brought under the Tucker Act.  On 19 January 2021, the Court issued an order granting in part and denying in part the government's motion for summary judgment and denying plaintiffs' motion for summary judgment.  On 17 February 2021, plaintiffs filed a motion for partial reconsideration of the Court's 19 January Order, arguing the Court committed clear legal error by considering the landowners' subjective knowledge in analyzing the doctrine of justifiable uncertainty.  Plaintiffs urge the Court to follow a 2007 Court of Federal Claims decision, *Banks v. United States*, which found government efforts to mitigate shoreline erosion caused justifiable uncertainty about the permanency of erosion although certain property owners did not know of the government's mitigation efforts or did not believe the government's efforts would be successful.  The government argues the 2007

*Banks* decision incorrectly pieced together elements of the justifiable uncertainty doctrine.  On 8 July 2021, the Court held oral argument on plaintiffs' motion.  For the following reasons, the Court **DENIES** plaintiffs' motion for partial reconsideration and finds the doctrine of justifiable uncertainty contains both subjective *and* objective elements—the plaintiffs must be subjectively "uncertain," and their belief must be objectively "justifiable."

## I.  Factual History[1]

In 1956, Congress authorized construction of the Mississippi River Gulf Outlet ("MRGO"), a 76-mile-long, 36-foot-deep channel in southeast Louisiana.  Op. and Order ("19 January Order") at 2, ECF No. 168.  Congress authorized the MRGO "to increase commerce by providing a direct connection between the Port of New Orleans and the Gulf of Mexico."  *St. Bernard Par. Gov't v. United States*, 887 F.3d 1354, 1357 (Fed. Cir. 2018).  The Port of New Orleans obtained easements, rights-of-way, and rights for spoil disposal, and the Army Corps of Engineers ("Corps") began constructing the MRGO in 1958.  19 January Order at 2–3.  Construction of the MRGO involved the Corps dredging coastal marshes and cypress swamps through Bayous Bienvenue, Dupre, La Loutre, and the Bayou La Loutre Ridge, resulting in a direct connection between Lake Borgne and the Gulf of Mexico through Breton Sound.  *Id.* at 3.  The Corps completed the MRGO in 1968, and from 1968 to 2009 the MRGO provided deep water vessels direct access between the Gulf of Mexico and Port of New Orleans.  *Id.*

The MRGO provided deep water vessels access to the port, but also caused saltwater intrusion and ecological change to surrounding areas.  *Id.*  It was estimated construction of the MRGO destroyed 2,500 acres of wetlands, and erosion along the banks of the MRGO destroyed an additional 4,220 acres within the first twenty years of operation of the channel.  *Id.*  Between 1978 and 1984, Coastal Environments, Inc. prepared various environmental studies for the St. Bernard Parish Police Jury analyzing wetland deterioration and the environmental impacts of saltwater intrusion on surrounding marshland.  *Id.* at 3–4.  In 1984, the Corps conducted an "Initial Evaluation Study" of the MRGO's effects on surrounding wetlands.  19 January Order at 4.  In the study, the Corps stated marshes were disappearing at an "alarming rate of 39.6 square miles per year" in part from erosion and saltwater intrusion and estimated 1,000,000 acres of Louisiana wetlands could be lost by 2040.  *Id.* at 4–5.  In 1988, the Corps conducted a further reconnaissance study of the MRGO's effects, in which it warned the MRGO banks would continue eroding several feet per year without remedial actions.  *Id.*  Following the 1988 reconnaissance study, Congress, the Environmental Protection Agency, and the Corps made various proposals or took steps related to either bank erosion, dredging operations, or the MRGO's effects on the surrounding wetlands.  *Id.* at 5–7.

In 2005, much of southern Louisiana was "catastrophically flooded during Hurricane Katrina[,] . . . one of the most devastating hurricanes that has ever hit the United States."  *St.*

---

[1] On 19 January 2021, the Court issued an opinion granting in part and denying in part the government's motion for summary judgment on the issue of the timeliness of plaintiffs' claims and denying plaintiffs' motion for summary judgment on the same issue.  *See* Op. and Order ("19 January Order"), ECF No. 168.  A full recitation of the factual and procedural histories in this case can be found in the 19 January Order.  *See id.* at 2–9.  The factual history in this Opinion and Order relies on uncontested facts expressed in the Court's 19 January Order and contains only those facts pertinent to plaintiffs' motion for partial reconsideration of the Court's 19 January Order.

*Bernard Par.*, 887 F.3d at 1358 (internal quotation marks omitted).  Hurricane Katrina caused severe shoaling in the MRGO which drastically changed the channel depth and rendered MRGO unusable as a deep draft waterway.  19 January Order at 7.  In 2007, facing high repair costs and potential for significant ecological harm, the Corps announced a plan to close the channel by July 2009.  *Id.*  The Corps officially de-authorized the MRGO from the Gulf Intracoastal Waterway to the Gulf of Mexico on 5 June 2008, and the outlet officially closed on 9 July 2009.  *Id.* at 8.  Over time Congress and the President directed the Corps to develop a full range of flood control, coastal restoration, and hurricane protection measures for the area around the MRGO, and in 2012 the Corps issued a "Final Feasibility Report" detailing the Corps' goal of restoring historic salinity conditions and native habitat acreages in the wetlands surrounding the MRGO.  *Id.*

Since construction of the MRGO in 1958, property owners collectively lost thousands of acres of land.  *Id.*  Plaintiffs own land around the MRGO and allege the United States, through the Corps, took their land for public use without just compensation in violation of the Fifth Amendment.  19 January Order at 8; *see also id.* at 9 (describing each plaintiff's tract of land around the MRGO).  Each landowner granted servitudes to the United States which permitted use of their land within 1,500 feet of the channel's original centerline, as well as granted servitudes eventually assigned to the United States related to rights of entry and temporary spoil disposal.  *Id.* at 9.

## II. Procedural Background

Plaintiffs Biloxi Marsh Lands Corporation and Lake Eugenie Land & Development, Inc. filed a complaint on 15 June 2012, alleging the government took their property without just compensation in violation of the Takings Clause of the Fifth Amendment to the United States Constitution.  *See* Compl., ECF No. 1.  The government filed a motion to dismiss the complaint on 31 August 2012.  *See* U.S.' Mot. to Dismiss for Lack of Subject Matter Jurisdiction and Supporting Mem., ECF No. 9.  On 24 June 2013, the then-undersigned judge denied the government's motion to dismiss, concluding the issue of "whether the statute of limitations has run" could not be resolved in a motion to dismiss.  Order and Op. at 3, ECF No. 18.  Plaintiffs filed an amended complaint on 29 October 2013.  *See* First Am. Compl., ECF No. 37.

This case was consolidated with *Borgnemouth Realty Co. v. United States* on 22 July 2015, *see* Order, ECF No. 59, and was further consolidated with *Terre Aux Boeufs Land Co. v. United States* on 30 January 2018, *see* Order Consolidating Related Matters, Granting-in-Part the Gov't's Mot. to Vacate, and Pre-Trial Scheduling Order, ECF No. 91.  The government filed a motion for summary judgment on 28 September 2018, arguing the Court does not have jurisdiction because plaintiffs' takings claims are barred by the Tucker Act's six-year statute of limitations.  *See* U.S. Mot. for Summ. J. and Supporting Mem., ECF No. 99.  Plaintiffs filed a response to the government's motion for summary judgment on 7 January 2019, *see* Pls.' Mem. Submitted (1) in Opp'n to the U.S.' Mot. for Summ. J. on Issue of Timeliness of Pls.' Takings Claims; and (2) in Supp. of Pls.' Mot. for Summ. J. on Same Issue, ECF No. 104, and a cross-motion for partial summary judgment on the statute of limitations issue on 8 January 2019, *see* Pls.' Mot. for Summ. J. on the Issue of Timeliness of Pls.' Takings Claims, ECF No. 105.  The government filed a reply in support of its motion for summary judgment and response to plaintiffs' cross-motion for summary judgment on 16 April 2019, *see* U.S.' Reply Mem. in Supp.

of Mot. for Summ. J. and Resp. to Pls.' Cross-Mot. for Summ. J. ("Gov't SJ Reply"), ECF No. 132, and plaintiffs filed a reply in support of their cross-motion for partial summary judgment on 29 May 2019, *see* Pls.' Reply Submitted (1) in Opp'n to U.S.' Mot. for Summ. J. on Issue of Timeliness of Pls.' Takings Claims and (2) in Supp. of Pls.' Cross-Mot. for Summ. J. on Same Issue, ECF No. 135.

On 29 July 2019, this case was reassigned to the undersigned Judge. *See* Order, ECF No. 136. The Court visited the alleged takings sites on 3 March and 4 March 2020 and held oral argument on the cross-motions for summary judgment in Washington, DC on 29 June 2020. *See* Order, ECF No. 159. Following agreement by counsel at oral argument, the Court ordered the parties to submit supplemental filings "containing description[s] of items in the summary judgment record currently before the Court that apply to a 'justifiable uncertainty' analysis corresponding to each of the agreed subunits." Order at 1, ECF No. 160. Plaintiffs filed their supplemental paper on 31 July 2020, *see* Pls.' List of Citations and Excerpts in Chronological Order Which Correspond to Each of the Agreed Subunits in a "Justifiable Uncertainty" Analysis, ECF No. 165, and the government filed its supplemental paper on 25 August 2020, *see* U.S.' Resp. to Pls.' "List of Citations and Excerpts" (ECF 165) and Mem. (ECF 166) Regarding Pls.' "Justifiable Uncertainty" Arg., ECF No. 167.

The Court issued a 64-page opinion on 19 January 2021 granting in part and denying in part the government's motion for summary judgment and denying plaintiffs' cross-motion for summary judgment. *See* 19 January Order. The Court noted, "[w]hile the record contains various proposed and completed projects affecting each category of land . . . it does not foreclose the possibility a landowner did not have actual knowledge of enough of the proposed and completed mitigation projects to be justifiably uncertain as to the permanency of the alleged taking," and expressed "[a]t any future trial the Court will have to closely examine the specific knowledge landowners had related to the proposed and completed mitigation actions contained in the record." *Id.* at 63. On 17 February 2021, plaintiffs filed a motion for partial reconsideration of the Court's 19 January Order, "submit[ting] the Court committed legal error by applying a subjective (instead of objective) standard that requires plaintiffs to provide evidence of actual knowledge of the government's post-1988 activities and proposed and completed projects related to the MRGO in order to render the accrual of plaintiffs' claims justifiably uncertain." Pls.' Mot. for Partial Recons. of Op. and Order Dated Jan. 19, 2021 Which Granted in Part and Denied in Part U.S.' Mot. for Summ. J. on Issue of Timeliness of Pls.' Takings Claims and Denied Pls.' Cross-Mot. for Summ. J. on Same Issue ("Pls.' Recons. Mot. ") at 3, ECF No. 169. The Court held a status conference to discuss plaintiffs' motion for partial reconsideration on 7 April 2021, *see* Order, ECF No. 171, and on 30 April 2021 scheduled response and reply briefing on plaintiffs' motion for partial reconsideration, *see* Order, ECF No. 176. The government filed a response to plaintiffs' motion for partial reconsideration on 14 May 2021, *see* U.S.' Resp. to Pls.' Mot. for Partial Recons. ("Gov't Resp."), ECF No. 177, and plaintiffs filed a reply in support of their motion on 24 May 2021, *see* Pls.' Reply in Supp. of Mot. for Partial Recons. of the Op. and Order Dated Jan. 19, 2021 ("Pls.' Reply"), ECF No. 181. The Court held oral argument on plaintiffs' motion for partial reconsideration in New Orleans, Louisiana, on 8 July 2021. *See* Order, ECF No. 184.

## III.  Parties' Arguments

Plaintiffs urge the Court to reconsider its 19 January 2021 Order because "the Court committed legal error by applying a subjective (instead of objective) standard that requires plaintiffs to provide evidence of actual knowledge of the government's post-1988 activities . . . to render the accrual of plaintiffs' claims justifiably uncertain."  Pls.' Recons. Mot. at 3.  In support of this position, plaintiffs argue:  (1) "[f]rom the beginning of this litigation," the parties agreed a purely objective standard applies to the justifiable uncertainty analysis; (2) the 2007 Court of Federal Claims decision, *Banks v. United States*, applied a wholly objective standard to find justifiable uncertainty; and (3) the Court should follow other decisions which imputed knowledge on a landowner under an objective analysis.  *Id.* at 8–13 (citing *Banks v. United States* ("CFC *Banks*"), 76 Fed. Cl. 686, 692–94 (2007)).  According to plaintiffs, applying the objective standard to the justifiable uncertainty analysis allows plaintiffs "to present all the evidence that is available, whether it's actual knowledge or constructive knowledge."  Transcript of Oral Argument on 8 July 2021 ("Tr.") at 19:14–21, ECF No. 192.  Plaintiffs admit "granting the motion for reconsideration would [not] result in a different outcome" for the 19 January Order, Tr. at 20:7–12, yet plaintiffs assert granting reconsideration would alter "what needs to happen going forward" with discovery and proceeding to trial, Tr. at 20:13–21:2.

In response, the government argues reconsideration of the justifiable uncertainty standard is not appropriate because "the Court's analysis of this issue is firmly supported by controlling law" and "[p]laintiffs have not demonstrated any legal error in this Court's claim accrual analysis—let alone the type of 'clear error' that would justify reconsideration under [Rule 59(a)(1) of the Rules of the Court of Federal Claims ("RCFC")]."  Gov't Resp. at 1–2.  The government responds to plaintiffs' specific arguments as follows:  (1) the statute of limitations is a jurisdictional issue, and the Court may rule on jurisdictional issues *sua sponte* without considering past statements by the parties; (2) plaintiffs' reliance on the nonprecedential 2007 Court of Federal Claims decision, *Banks v. United States*, cannot demonstrate the Court committed "clear legal error" when it relied on precedential Federal Circuit cases; and (3) plaintiffs' "imputed knowledge" standard is inconsistent with claim accrual principles and plaintiffs' burden to establish this Court's jurisdiction.  *Id.* at 3–10.

## IV.  Applicable Law

### A.  Motions for Reconsideration under Rule 59(a)

Pursuant to RCFC 59(a), a court "may, on motion, grant a new trial or a motion for reconsideration on all or some of the issues."  RCFC 59(a)(1).  The Federal Circuit has identified "three primary grounds that justify reconsideration":  "(1) an intervening change in the controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice."  *Del. Valley Floral Grp., Inc. v. Shaw Rose Nets, L.L.C.*, 597 F.3d 1374, 1383 (Fed. Cir. 2010) (internal citations and quotation marks omitted).  Motions for reconsideration "must be supported 'by a showing of extraordinary circumstances which justify relief.'"  *Caldwell v. United States*, 391 F.3d 1226, 1235 (Fed. Cir. 2004) (quoting *Fru-Con Constr. Corp. v. United States*, 44 Fed. Cl. 298, 300 (1999)) *aff'd*, 250 F.3d 762 (Fed. Cir. 2000) (table).  Deciding whether reconsideration is appropriate "lies largely within the discretion of the

[trial] court." *Yuba Nat. Res., Inc. v. United States*, 904 F.2d 1577, 1583 (Fed. Cir. 1990) (citations omitted).

A party seeking reconsideration on the grounds of correcting clear error or preventing manifest injustice, cannot prevail "unless it demonstrates that any injustice is 'apparent to the point of being almost indisputable.'" *See, e.g.*, *Griffin v. United States*, 96 Fed. Cl. 1, 7 (2010) (quoting *Pac. Gas & Elec. Co. v. United States*, 74 Fed. Cl. 779, 785 (2006), *rev'd on other grounds*, 536 F.3d 1282 (Fed. Cir. 2008)). "'Manifest,' as in 'manifest injustice,' is 'understood as clearly apparent or obvious.'" *Peretz v. United States*, 151 Fed. Cl. 465, 469 (2020) (quoting *Cyios Corp. v. United States*, 124 Fed. Cl. 107, 113 (2015)). A motion for reconsideration "should not be entertained upon 'the sole ground that one side or the other is dissatisfied with the conclusions reached by the court, otherwise the losing party would generally, if not always, try his case a second time, and litigation would be unnecessarily prolonged.'" *Seldovia Native Ass'n v. United States*, 36 Fed. Cl. 593, 594 (1996) (quoting *Roche v. District of Columbia*, 18 Ct. Cl. 289, 290 (1883)).

## B.  The Doctrines of Stabilization and Justifiable Uncertainty

In determining when a plaintiff's takings claim first accrues under the Tucker Act, "the key date . . . is the date on which the plaintiff's land has been clearly and permanently taken." *Boling v. United States*, 220 F.3d 1365, 1370 (Fed. Cir. 2000) (citation omitted). "[W]here the government leaves the taking of property to a gradual physical process" such as erosion, however, "determining the exact moment of claim accrual is difficult." *Id.* When a taking occurs through a gradual process, courts determine when the statute of limitations begins to run by applying two distinct doctrines: stabilization and justifiable uncertainty. *See, e.g.*, *United States v. Dickinson*, 331 U.S. 745, 749 (1947) (stating the statute of limitations does not run on a claim for a taking related to a gradual physical process until the taking has "stabilized"); *Applegate v. United States*, 25 F.3d 1579, 1583 (Fed. Cir. 1994) (concluding the statute of limitations did not run because the government's promise to restore the land made the landowners justifiably uncertain about the permanency of the taking).

The Supreme Court first addressed the relationship between gradual takings of real property and the statute of limitations in *United States v. Dickinson*, explaining "[p]roperty is taken in the constitutional sense when inroads are made upon an owner's use of it to an extent that, as between private parties, a servitude has been acquired either by agreement or in course of time." *Dickinson*, 331 U.S. at 748. Acknowledging the difficulties of determining the exact moment a gradual physical taking starts to affect land and continuous nature of the taking, the Supreme Court ruled a landowner could "postpon[e] suit until the situation becomes stabilized" whereby "the consequences of inundation have so manifested themselves that a final account may be struck." *Id.* at 749. The Supreme Court has since explained *Dickinson*'s "expressly limited holding . . . was that the statute of limitations did not bar an action under the Tucker Act for a taking by flooding when it was uncertain at what stage in the flooding operation the land had become appropriated to public use." *United States v. Dow*, 357 U.S. 17, 27 (1958). The "touchstone for any stabilization analysis is determining when the environmental damage has made such substantial inroads into the property that the permanent nature of the taking is evident and the extent of the damage is foreseeable." *Boling*, 220 F.3d at 1372. Once a parcel of land

has "been substantially encroached by erosion, the permanent nature of the taking [is] evident and the claim stabilized within the meaning of *Dickinson*." *Id.* at 1372–73.

In certain circumstances, a claim for a taking of property through a gradual physical process will not accrue even after the claim is stabilized if the landowners "remain justifiably uncertain about the permanency of the erosion and the taking." *Applegate*, 25 F.3d at 1583. In *Applegate*, although the land at issue had been substantially encroached by erosion, the government made repeated promises to the landowners to build a "sand transfer plant" to repair the eroded beaches. *Id.* at 1580. The Federal Circuit explained, "precisely because of the Government's promises to build a sand transfer plant, the landowners remain[ed] justifiably uncertain about the permanency of the erosion and taking" and therefore the six-year statute of limitations did not bar the landowner's claims for damages. *Id.* at 1583; *see also Banks v. United States* ("*Banks II*"), 314 F.3d 1304, 1309 (Fed. Cir. 2003) (stating *Applegate* does not require "a legally binding promise or duty or a matter requiring a congressional appropriation," rather a landowner can be justifiably uncertain about the permanency of a taking when the Corps simply starts mitigation efforts without congressional appropriation or government promises).

The Federal Circuit discussed two situations where justifiable uncertainty cannot affect accrual of a takings claim. In *Mildenberger v. United States*, the Federal Circuit explained there "[was] no justifiable uncertainty . . . because the Corps neither undertook nor committed itself to any mitigation activities." *Mildenberger v. United States*, 643 F.3d 938, 947 (Fed. Cir. 2011). The landowners could not rely on local newspaper articles and community newsletters as evidence of justifiable uncertainty, because those documents did not clearly "notify the public of any potential Corps action and did not commit the Corps to any action." *Id.* at 947. The Federal Circuit has also explained plaintiff cannot rely on government promises or actions to establish justifiable uncertainty if plaintiff is "not aware of these [mitigation] plans until after they file[]" the lawsuit. *Boling*, 220 F.3d at 1372. When a plaintiff is "not aware" of government plans before suing, "justifiable uncertainty . . . is simply not present." *Id.*

## V.  Analysis

### A.  Whether the Court Should Reconsider its 19 January Order Because the Parties Allegedly Agreed a Wholly Objective Standard Should Apply

Plaintiffs argue reconsideration is appropriate because, "[f]rom the beginning of this litigation," the parties "agreed that [an] objective standard applies" to the doctrine of justifiable uncertainty. Pls.' Recons. Mot. at 8. For support, plaintiffs cite various statements from the government's briefing which plaintiffs assert show the government agreed an "objective standard applied and that a plaintiff's subjective knowledge of the government's mitigation efforts was immaterial." *Id.* at 8–10. At oral argument, plaintiffs stated "this is kind of a judicial estoppel argument," claiming the government "sa[id] one thing in their opening brief . . . and now they try to take just the opposite [position]." Tr. at 11:5–13. Plaintiffs further argue the government's past statements prejudiced plaintiff, because "it would have been very simple for the [g]overnment to argue . . . a subjective standard is what applies," and this "would have put everybody on notice that that's what they were arguing" so plaintiffs could have responded in their summary judgment briefs. Tr. at 34:7–17.

The government denies it ever took the position justifiable uncertainty was a wholly objective standard, calling plaintiffs' characterization "wrong" and arguing, although it "does agree that an objective standard applies to determine when the environmental change at issue in this case 'substantially encroached' the [p]laintiffs' properties . . . the United States has never argued that [p]laintiffs' subjective knowledge regarding the Corps' activities along the MRGO is irrelevant." Gov't Resp. at 9. To support the claim it never treated justifiable uncertainty as a wholly objective standard, the government points to interrogatories which were "designed to ascertain [p]laintiffs' knowledge regarding any Corps activities [p]laintiffs may have interpreted as 'mitigation' activities along the channel" and to deposition testimony the government cited in its reply brief allegedly "showing that [p]laintiffs lacked subjective knowledge regarding mitigation projects that could have affected the permanence of physical changes on [p]laintiffs' properties."[2] *Id.* at 9–10. At oral argument, the government argued plaintiffs were misinterpreting its briefs, and it always argued "there are two parts to justifiable uncertainty," a subjective and an objective component. Tr. at 13:10–23.

The government states, "[m]ore importantly, the parties' argued positions on this jurisdictional issue do not circumscribe the Court's analysis," rather this Court has an obligation to satisfy itself of jurisdiction at all points in a case. Gov't Resp. at 10; Tr. at 17:2–5 ("[T]he Court has to satisfy itself of its own jurisdiction, and so the Court's obligation in ruling on this statute of limitations issue was to determine whether or not it had subject matter jurisdiction here . . . ."). At oral argument, plaintiffs agreed "the statute of limitations is a jurisdictional bar," and "the question surrounding when the statute of limitations does or does not run are questions affecting the subject matter jurisdiction [of the Court]." Tr. at 21:3–12. Plaintiffs also agreed any mistake by the government regarding the appropriate justifiable uncertainty standard "doesn't bind the Court" but maintained the government "waive[d] any arguments" related to the appropriate justifiable uncertainty standard. Tr. at 23:18–24.

---

[2] The government admits it did not "argue[] in the same full-throated way . . . about actual knowledge [as about the reasonableness component] in [the government's] summary judgment briefs." Tr. at 15:15–18. The government specifically identifies, however, language in its reply in support of its motion for summary judgment and interrogatories 10 and 21 as evidence it sought discovery into, or made arguments related to, plaintiffs' subjective beliefs. *See* Gov't Resp. at 9–10. Interrogatory No. 10 reads:

> For the period 1988 to present, identify all communications by Plaintiffs discussing or referring to the possibility that the United States would take action to mitigate or remediate the erosion and other damage, if any, you allege that your property experienced as a result of the United States' MRGO-related activities.

*Id.* at 9. Interrogatory No. 21 reads:

> Please identify any meeting you attended relating to the United States' construction, operation, maintenance, or closure of the MRGO, including any meeting concerning the possible restoration or remediation of the environment surrounding the MRGO, and indicate whether you spoke at any meeting or submitted comments in writing.

*Id.* at 10. Page 16 of the government's reply in support of its motion for summary judgment includes portions of depositions of plaintiffs' representatives in which the government asks whether the Corps specifically promised plaintiffs the Corps would repair the channel or if plaintiffs recalled "the Corps . . . embarking upon a project that whose [sic] purpose was to restore the channel to its original size." Gov't SJ Reply at 15–16.

The doctrine of justifiable uncertainty affects when a takings claim has stabilized, which in turn affects when the statute of limitations on a plaintiff's claim begins to run.  *See Applegate*, 25 F.3d at 1584.  "It is well established that statutes of limitations for causes of action against the United States, being conditions on the waiver of sovereign immunity, are jurisdictional in nature."  *Martinez v. United States*, 333 F.3d 1295, 1316 (Fed. Cir. 2003) (citations omitted); *see also LW Constr. of Charleston, L.L.C. v. United States*, 139 Fed. Cl. 254, 280 (2018) (quoting *TS Infosystems, Inc. v. United States*, 36 Fed. Cl. 570, 572 (1996)) ("The 'statute of limitations is a jurisdictional issue in the Court of Federal Claims.'").  "The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment."  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); *see also Barlow & Haun, Inc. v. United States*, 118 Fed. Cl. 597, 613 (2014) (citing *Arbaugh*, 546 U.S. at 506) ("[B]ecause the statute of limitations is a jurisdictional limitation, it may be raised as an issue at any time.").  This Court has an affirmative duty to confirm it has subject matter jurisdiction at any point in the case.  *See Arctic Corner, Inc. v. United States*, 845 F.2d 999, 1000 (Fed. Cir. 1988) (citing *Duke City Lumber Co. v. Butz*, 539 F.2d 220, 221 n.2 (D.C. Cir. 1976) ("A Court may and should raise the question of its jurisdiction *sua sponte* at any time it appears in doubt.").  It follows then, subject matter jurisdiction "can never be waived or forfeited" by a party, and "[w]hen a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented."  *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012); *see also McNaughton v. United States*, 118 Fed. Cl. 274, 281 (2014) (citations omitted) ("Plaintiffs' contention that the government has waived this argument is simply mistaken.  It is well-established that subject matter jurisdiction cannot be waived.  The court has an independent duty to dismiss a complaint if and when it determines that it lacks subject matter jurisdiction.").

The government cites examples of deposition transcripts and interrogatories where it raised questions about plaintiffs' subjective uncertainty of the permanency of the taking, and none of the government's language plaintiffs highlight suggests the government took the definitive position justifiable uncertainty was a wholly objective standard.  *See* Gov't Resp. at 9–10.  The government has not asserted a contrary position "designed to prevent the perversion of the judicial process"; therefore, it has not waived its ability under a judicial estoppel theory to argue there is both a subjective and objective component to justifiable uncertainty.  *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1565 (Fed. Cir. 1996); *see also Wang Labs, Inc. v. Applied Comput. Scis., Inc.*, 958 F.2d 355, 358 (Fed. Cir. 1992) (citation omitted) ("The doctrine of judicial estoppel is the general proposition that where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position.").  The Court thus finds the government's argument is not inconsistent with its previous position, and holds the government is not estopped from arguing plaintiffs' subjective knowledge is relevant to the justifiable uncertainty inquiry.  *See Data Gen. Corp.*, 78 F.3d at 1565 (citations omitted) ("The decision whether to invoke judicial estoppel lies within the court's discretion . . . .").

Justifiable uncertainty is a factor in determining whether an erosion-based takings claim has accrued and, critically, whether a takings claim has accrued is a jurisdictional question.  *See Martinez*, 333 F.3d at 1316; *Applegate*, 25 F.3d at 1584.  This Court is obliged to independently satisfy itself of jurisdiction at every stage of a case, *see Arctic Corner, Inc.*, 845 F.2d at 1000,

hence the government could not waive this Court's obligation by agreeing to a different standard for calculating accrual for each "category" of land at issue in this case. *Gonzalez*, 565 U.S. at 141. The Court concludes, neither plaintiffs' characterization of the government's past statements, nor the parties alleged "agreement" establish the clear legal error or manifest injustice necessary to warrant reconsideration of the Court's 19 January Order.

**B. Whether the 2007 Court of Federal Claims Decision, *Banks v. United States*, Suggests this Court Should Reconsider its 19 January Order**

In their motion for reconsideration, plaintiffs quote several pages of a 2007 Court of Federal Claims decision, *Banks v. United States*, and "urge the Court" to "follow the well-reasoned analysis of the case on which both parties have relied from the beginning and hold that the objective standard applies and plaintiffs do not need to prove actual knowledge to render accrual of their claims justifiably uncertain." Pls.' Recons. Mot. at 10–12 (quoting CFC *Banks*, 76 Fed. Cl. at 692–94).

**1. History of *Banks v. United States***

If takings cases were books, the *Banks* case—spanning two decades and counting—would sit comfortably on the shelf with 1,000-page tomes like *Atlas Shrugged* and *Les Misérables*. In 1999, owners of property along Lake Michigan brought a takings claim in the Court of Federal Claims alleging the Corps' maintenance of jetties caused erosion of their shoreline property. *See Banks v. United States*, 49 Fed. Cl. 806 (2001), *rev'd*, 314 F.3d 1304 (Fed. Cir. 2003). The court dismissed plaintiffs' claims, holding the claims accrued in 1989, thus they were time barred. *Id.* at 826. The Federal Circuit reversed and remanded, holding the government's mitigation actions created justifiable uncertainty regarding the permanency of the taking. *Banks II*, 314 F.3d at 1310. The Federal Circuit also held "the accrual of [*Banks II*] plaintiffs' claims remained uncertain until [government reports] collectively indicated that erosion was permanent and irreversible . . . . The statute of limitations did not begin to run until the [government] issued [its reports concluding the erosion was permanent]." *Id.* After remand, new evidence suggested certain property owners (1) did not know of the government's mitigation efforts or (2) did not assume the government's efforts would be successful. CFC *Banks*, 76 Fed. Cl. at 692.

The CFC *Banks* court therefore considered whether landowners—either without knowledge of mitigation activities or believing mitigation activities would not actually benefit their property—could delay accrual of their claims under the doctrine of justifiable uncertainty. The court concluded justifiable uncertainty is a wholly objective test.[3] CFC *Banks*, 76 Fed. Cl. at 692. The court examined: "[t]he language of the [justifiable uncertainty] test";[4] different

---

[3] Plaintiffs agreed "the mitigation activity in *Banks* was the Government sailing a barge or multiple barges out and dumping large piles of sand on each [p]laintiff['s] property. [The mitigation] was fairly clear and obvious and right in front of [plaintiffs]." Tr. at 46:1–9. The CFC *Banks* decision notes the case involved "thirty-eight plaintiffs in the consolidated action" as of 3 May 2007 and addresses the government's challenge to only fifteen plaintiffs who were either unaware of the mitigation activities or believed the mitigation activities would not be successful. CFC *Banks*, 76 Fed. Cl. at 688, 692.

[4] The CFC *Banks* court stated "[t]he language of the test—'justifiable uncertainty'—indicates the objective nature of the test." CFC *Banks*, 76 Fed. Cl. at 692. According to Judge Hewitt, this language suggests "[t]he test . . . does not

Federal Circuit cases related to takings claim accrual in contexts distinct from erosion-based takings or the stabilization context;[5] the Federal Circuit's decisions in *Applegate*, *Banks II*,[6] and *Boling*; and the objective standard the Supreme Court established for the doctrine of stabilization.[7] *Id.* at 692–95.  Notwithstanding the new evidence, Judge Hewitt stated, "[t]his court is bound by the law of the case as set forth in *Banks II*." *Id.* at 696–97.  The CFC *Banks* court was thus merely following the Federal Circuit's *Banks II* holding regarding objective and subjective analysis.  *Id.* at 696.  The parties agree CFC *Banks* was not reviewed by the Federal Circuit and is not precedential on this Court.  Tr. at 43:18–44:3.

## 2. Parties' Arguments

Plaintiffs cite CFC *Banks* as proof "the Court may have committed legal error," Pls.' Reply at 7, arguing CFC *Banks* establishes justifiable uncertainty can be shown by a landowner through either "actual knowledge or imputed knowledge," Tr. at 70:17–20, 38:25–39:1, with imputed knowledge satisfied by showing documents were publicly available during the time of the alleged uncertainty, Tr. at 75:7–14.  Plaintiffs admit the Federal Circuit's *Banks II* decision does not explicitly state whether "actual" or "imputed" knowledge is required under the doctrine of justifiable uncertainty, but they emphasize "there is no mention [in *Banks II*] at all about actual knowledge." Tr. at 61:25–62:7 ("Certainly if the Court wan[ted] to make actual knowledge a requirement, the Court could have put that in there, but it didn't.").  Plaintiffs further state, "[a] plaintiff can continue to rely on" the government's attempted mitigation efforts to delay accrual, "[e]ven if the [p]laintiff believes that what the [g]overnment is doing would have no effect" on the permanency of the taking.  Tr. at 40:21–41:2.  At oral argument, plaintiffs could not identify "any case in which the [Federal] Circuit states that justifiable uncertainty is a wholly objective standard," but plaintiffs argue "in every case, the Federal Circuit has used and applied an objective standard."  Tr. at 64:13–22.

---

merely turn on whether or not a plaintiff is uncertain—a subjective standard that is defined by a plaintiff's actual perception—but rather turns on whether a plaintiff's uncertainty is 'justifiable.'" *Id.*

[5] The CFC *Banks* court relied on *Fallini v. United States* and *Coastal Petroleum Co. v. United States*, neither of which discuss the doctrine of justifiable uncertainty or relate to an erosion-based taking that occurred after the Federal Circuit's *Applegate* decision and its progeny.  *See Fallini v. United States*, 56 F.3d 1378, 1383 (Fed. Cir. 1995) (finding plaintiffs' takings claim for water drunk by wild horses was time-barred by the statute of limitations); *Coastal Petrol. Co. v. United States*, 228 Ct. Cl. 864, 867–68 (1981) (finding plaintiffs' takings claim for the government's use of limestone to which plaintiff had leased mineral rights was time-barred).

[6] In referencing *Applegate* and *Banks II*, the CFC *Banks* court relied on language in the Federal Circuit cases describing the doctrine of stabilization and justifying an objective standard for determining when a plaintiff's claims first stabilized.  76 Fed. Cl. at 693.

[7] The CFC *Banks* decision cites the Supreme Court's *Dickinson* decision as support for finding justifiable uncertainty is a wholly objective standard.  CFC *Banks*, 76 Fed. Cl. at 694.  *Dickinson* does not address the doctrine of justifiable uncertainty as a mechanism for plaintiffs to delay the accrual of a claim, and the CFC *Banks* decision does not explain how the Supreme Court's standard for when the statute of limitations on erosion-based takings begins should be applied to a doctrine delaying accrual.  CFC *Banks*, 76 Fed. Cl. at 694.  As the Court notes *infra*, it must strictly construe waivers of sovereign immunity, such as the statute of limitations and doctrines affecting when the statute of limitations begins to run, in favor of the sovereign.  *See infra* Section V.C; *see also* Tr. at 14:16–22 ("[GOVERNMENT]: . . . [justifiable uncertainty] is a branch off of a tree that otherwise holds that there is a strict six-year statute of limitations that has to be strictly construed against the [p]laintiff.").

The government argues plaintiffs have not shown the Court "committed legal error" sufficient to meet the "extraordinary relief" standard of reconsideration.  Gov't Resp. at 3–4. Citing this Court's reliance on Federal Circuit decisions "in *Applegate*, *Banks*, and *Boling*, which are the controlling legal authorities that establish the 'justifiable uncertainty' doctrine and delineate its contours," *id.* at 5, the government argues plaintiffs "fail to point to any controlling authority that contradicts the Court's summary judgment analysis regarding 'justifiable uncertainty'" and, therefore, fail to show "the Court committed 'legal error,'" *id.* at 7.  The government acknowledges "Judge Hewitt did treat 'justifiable uncertainty' as an objective inquiry" but argues the court incorrectly "conflate[d] the analysis applicable to 'stabilization' with the analysis applicable to 'justifiable uncertainty,' which are distinct inquiries in determining claim accrual in gradual physical takings cases."  *Id.* at 6.  The government argues a more "nuance[d]" characterization of justifiable uncertainty cases is appropriate, where, instead of a wholly objective or wholly subjective standard, "there is an objective and a subjective component" to the test.  Tr. at 65:3–6.  The government argues objective reasonableness is "a necessary but not sufficient condition," a sort of "step one" to the two-step test, as *Boling* makes clear "a plaintiff actually needs to know about . . . mitigation activities in order for justifiable uncertainty" to delay accrual of a claim.  Tr. at 65:11–66:3.  The government claims, plaintiffs' argument relying on CFC *Banks* "certainly reads out the Federal Circuit's opinion in *Boling*, which is dispositive entirely on [p]laintiffs' motion."  Tr. at 15:5–7.

The government argues Judge Hewitt "put the pieces together" incorrectly when "trying to cobble together" language from *Banks II* and "a bunch of other opinions" to "come up with some consistency" for "a very specific judge-made jurisdictional test."  Tr. at 55:3–9, 57:4–10.  The government avers the CFC *Banks* court "got it wrong" and this Court's 19 January Order "got it right" as the CFC *Banks* opinion "barely tries to distinguish *Boling* and does it . . . badly" and because "there are differences in whether you should construe objective facts, access to facts, activities on property against [p]laintiffs [for] claim accrual purposes and not do the same thing for determining justifiable uncertainty, because it's a different inquiry, and it's an exception to the statute of limitations."  Tr. at 55:9–10, 56:2–12.

In response to plaintiffs' argument the 2003 Federal Circuit *Banks II* decision did not adopt an "actual knowledge" standard for the doctrine of justifiable uncertainty, the government argues in *Banks II* "there is an underlying concept regarding justifiable uncertainty that . . . it's about . . . what [p]laintiffs know or believe about the permanence of the physical invasion of their property" and the language in *Boling* regarding justifiable uncertainty "goes entirely undisturbed by" *Banks II*.  Tr. at 63:14–64:2.

### 3.  Other Cases Analyzing the Doctrine of Justifiable Uncertainty

The Federal Circuit first explained the doctrine of justifiable uncertainty and its relationship to the doctrine of stabilization in *Applegate*, stating "precisely because of the [g]overnment's promises to build a sand transfer plant, the landowners remain justifiably uncertain about the permanency of the erosion and the taking."  *Applegate*, 25 F.3d at 1583; *see also id.* at 1584 ("[T]he Corps set in motion a very gradual and perpetual physical process of taking.  The Corps further complicated ascertaining the extent and nature of the consequences of this process with proposals to correct the damage.").  The Federal Circuit in *Applegate* did not

detail a knowledge standard for determining whether a landowner's justifiable uncertainty regarding the permanency of an erosion-based taking is sufficient to delay accrual of the statute of limitations.  *See Applegate*, 25 F.3d 1579.

Two later Federal Circuit cases clarified the standard is a two-part inquiry where both parts must be shown to some degree:  (1) whether a landowner's *subjective* knowledge of the government's promises or actions caused the landowner to be uncertain about the taking's permanence; and (2) whether government promises or actions caused the landowner an *objectively* reasonable uncertainty of the taking's permanence.  *See Boling*, 220 F.3d at 1372 (finding plaintiffs could not prevail without showing subjective knowledge); *Mildenberger*, 643 F.3d at 947 (finding claimants could not prevail without proving knowledge was objectively justifiable).  In *Boling*, the Federal Circuit rejected the landowners' "attempt to fit themselves within the [justifiable uncertainty] rule expressed in *Applegate*" because, "unlike the situation in *Applegate*, the plaintiffs in [*Boling*] were not aware of these [mitigation] plans until after they filed [the] lawsuit."[8]  *Boling*, 220 F.3d at 1372.  Landowners in *Boling* were not aware of the government's proposed and actual mitigation activities until after they filed suit, so "the critical element that delayed stabilization in *Applegate*—the justifiable uncertainty about the permanency of the taking—is simply not present in [*Boling*]."  *Id.*  The *Boling* court thus distinguished *Applegate* and the CFC *Banks* court improperly discounted this distinction when holding a "subjective [requirement]" to justifiable uncertainty would "explicitly contradict the standard [the Federal Circuit] articulated in *Boling*."  CFC *Banks*, 76 Fed. Cl. at 694.

The Federal Circuit in *Mildenberger* explained justifiable uncertainty was not present, despite plaintiffs' citation to local newspaper articles and declarations by local residents believing the Corps would repair damage it allegedly caused, "because the Corps neither undertook nor committed itself to any mitigation activities."  *Mildenberger*, 643 F.3d at 947.  Plaintiffs in *Mildenberger* could not show government action or promises reasonably suggesting the government would restore the local waterway, and therefore their subjective uncertainty about the permanency of any taking was not objectively justifiable.  *See id.*  Rather than creating conflicting subjective and objective standards, *Boling* and *Mildenberger* show the doctrine of justifiable uncertainty contains both subjective *and* objective elements—the plaintiffs must be subjectively "uncertain," and their belief must be objectively "justifiable."  *See Boling*, 220 F.3d at 1372; *Mildenberger*, 643 F.3d at 947.  The Court's 19 January Order analyzed the date ranges for various tracts where a landowner could have been objectively uncertain as to the permanency of the erosion-based taking but concluded the Court could not determine (at the summary

---

[8] During oral argument, plaintiffs sought to distinguish *Boling* by arguing the language in *Boling* stating justifiable uncertainty was not present in the case because "the plaintiffs . . . were not aware of [mitigation] plans until after they filed this lawsuit," *Boling*, 220 F.3d at 1372, is actually "not based on a distinction between actual or imputed knowledge," Tr. 72:12–16, rather, without any additional support or case citations, the use of the word "awareness" by the Federal Circuit is "talking about knowledge, but not about actual versus imputed [knowledge]."  Tr. at 88:21–24; *see also* Tr. at 89:24–90:1 (Plaintiffs' state, "we don't read the word 'aware' in *Boling* to mean actual knowledge.").  Plaintiffs provide no case to support the distinction between "awareness" and "actual knowledge" and concede it is "not clear" how plaintiffs in *Boling* were "not aware of [the government's mitigation] plans until after they filed a lawsuit" under plaintiffs' standard of "imputed knowledge" being sufficient to establish justifiable uncertainty.  Tr. at 92:21–93:1.

judgment stage) whether plaintiffs subjectively knew of the government's actions or promises sufficient for their claims to survive the statute of limitations.  19 January Order at 60–63.

Other cases in this court apply both subjective and objective elements of the justifiable uncertainty analysis, as required by *Boling* and *Mildenberger*.  In *Henderson County Drainage District No. 3 v. United States,* 60 Fed. Cl. 748 (2004), the court relied on communications between the Corps and plaintiffs regarding the government's maintenance of a levee system to conclude "plaintiffs have failed to show that, as a result of the behavior of [the government], they were made justifiably uncertain with respect to their takings claim." *Id.* at 755 (internal quotation marks omitted).  In *Henderson County*, Judge Hewitt stated plaintiffs were neither subjectively uncertain because "[t]he exchange of correspondence and the conversations between the Corps and [plaintiffs] . . . left no justifiable uncertainty" in the plaintiffs, nor objectively uncertain because the Corps' subsequent public statements "could not have created a reasonable or justifiable basis for uncertainty." *Id.*  The court in *Prakhin v. United States*, 131 Fed. Cl. 706 (2017), on the other hand, found justifiable uncertainty applied to delay accrual of plaintiff's claim as "the collective evidence proffered by [p]laintiff that the Army Corps promised to remove sand from [p]laintiff's property, and that the nature of the Army Corps' communication with the residents of [plaintiff's neighborhood] rendered accrual of [p]laintiff's claim 'justifiably uncertain.'"  *Id.* at 718 (citing *Applegate*, 25 F.3d at 1583).  In *Prakhin*, Judge Braden found justifiable uncertainty by relying on both depositions of local residents who met with and repeatedly received the Corps' promises to mitigate *and* articles published on the Corps' website proposing projects it represented as a "long-term solution to the beach erosion." *Id.* at 714–16.

### 4. The 2007 Court of Federal Claims Decision, *Banks v. United States*, Does Not Warrant Reconsideration of the Court's 19 January Order

As plaintiffs note in their motion, reconsideration is "a request for extraordinary relief." Pls.' Recons. Mot. at 7; *see also Caldwell*, 391 F.3d at 1235.  The Court's 19 January Order on the parties' cross-motions for summary judgment relied on binding Federal Circuit precedent and did not commit legal error by concluding, based on this precedent, justifiable uncertainty has *both* an objective *and* a subjective element a plaintiff must satisfy to delay accrual of a claim for calculating the statute of limitations.  *See* 19 January Order at 62–63.  Plaintiffs' reliance on a non-precedential Court of Federal Claims case expressing a different conclusion on the appropriate knowledge standard does not prove the Court committed a clear legal error or manifest injustice "apparent to the point of being almost indisputable," *Pac. Gas & Elec. Co*, 74 Fed. Cl. at 785 (2006), *rev'd on other grounds*, 536 F.3d 1282 (Fed. Cir. 2008), or support "a showing of extraordinary circumstances which justify relief," *Caldwell*, 391 F.3d at 1235 (citation omitted).

### C. Whether Decisions Imputing Knowledge on Landowners Warrants Reconsideration of the Court's 19 January Order

#### 1. Parties' Arguments

Plaintiffs further argue the Court committed clear legal error or manifest injustice by not applying a wholly objective standard to determine whether justifiable uncertainty applies to the

statute of limitations on plaintiffs' claims because "the Court imputed to the plaintiffs knowledge of matters related to the MRGO that occurred prior to 1988" when calculating the dates the claims stabilized, and "[t]here is no reason not to impute to [plaintiffs] knowledge of related matters that occurred afterwards." Pls.' Recons. Mot. at 13. For support, plaintiffs' aver "several decisions . . . suggest the Court should impute to the plaintiffs knowledge of post-1988 matters related to the MRGO which render accrual of their claims justifiably uncertain." *Id.* Under plaintiffs' standard, the Court should impute to plaintiffs knowledge of the government's actions affecting plaintiffs' land, regardless of whether a landowner knew and believed the government's action to mitigate damages, had no actual knowledge of the mitigation, or knew about the government's actions but did not actually believe the actions would mitigate the damage.[9] Tr. at 100:8–101:22. Plaintiffs' also raise a fairness argument in support of the legal decisions cited to show the Court committed clear legal error warranting reconsideration, arguing "[t]here's no reason to apply that rule differently in favor of the [g]overnment but against property owners," as an objective standard is "a rule that applies across the board." Tr. at 103:14–17.

The government responds, case law distinguishes between 1) assuming a landowner's knowledge from objective facts for purposes of triggering the statute of limitations to restrict a court's jurisdiction, and 2) attributing objective facts to a landowner's knowledge for purposes of limiting the statute of limitations or other jurisdictional bar. *See* Tr. at 105:12–19 ("[T]he case law bears out that the situation is different in the case of justifiable uncertainty, which is . . . not about how a plaintiff can meet its duty to investigate its claim or how a plaintiff can meet its obligation to know what's going on on its property. Instead, it's about a limited exception to the application of the statute of limitations."); *see also* Gov't Resp. at 8 ("The rule [p]laintiffs advocate—that the statute of limitations should be tolled in a landowner's favor where the landowner is actually unaware of a mitigation project that might impact their property—is inconsistent with the Tucker Act's jurisdictional statute of limitations and relieves [p]laintiffs of their proof burden."). The government characterizes the purpose of the doctrine of justifiable uncertainty as akin to a "concept of fairness that indicates that if the [g]overnment has itself injected confusion into the situation and the plaintiffs are aware of what the [g]overnment's doing and experiences that confusion . . . we shouldn't hold it against the plaintiff that the plaintiff's confused." Tr. at 107:16–21. "Consistent with" this purpose of the doctrine of

---

[9] When the Court asked whether a landowner could completely believe government action would not affect the permanency of a taking but still rely on the doctrine of justifiable uncertainty to bring a claim otherwise barred by the statute of limitations, counsel for plaintiffs stated the question could turn on whether a particular landowner "has special training" or is an "average person." Tr. at 101:7–22. Counsel stated a landowner with "special training" in the nature of the government action may have a more informed or accurate belief as to the effectiveness of the government action and therefore "you can probably attribute it to that [landowner] . . . to start the running of the statute of limitations" if the landowner does not believe the government action will affect the permanency of the taking. *Id.* On the other hand, plaintiffs argue, the subjective beliefs of the "average person" who does not have technical knowledge related to the government's projects should not affect whether the landowner can rely on the doctrine of justifiable uncertainty. *Id.* Plaintiffs cite no authority, nor has the Court found any authority, for plaintiffs' suggestion whether a landowner's subjective belief affects the doctrine of justifiable uncertainty depends on the individual landowner's technical knowledge. Rather, plaintiffs stated "I agree with that" in response to the Court's question regarding a landowner's general "duty to monitor and . . . to be prudent," which suggests a special knowledge requirement is improper from a policy perspective. Tr. at 102:12–103:3; *see also Boling*, 220 F.3d at 1373 n.5 (discussing a landowner's duty to take reasonable steps to protect property from further erosion damage).

justifiable uncertainty, the government argues, "is the requirement that a plaintiff actually know about what is going on that would render a potential taking uncertain." Tr. at 108:3–5.

## 2. Analysis of Cases Imputing Knowledge to Landowners

As the government notes in response to plaintiffs' motion for reconsideration, "none of the cases [p]laintiffs cite" as examples of a court imputing knowledge to a landowner "impute knowledge *in plaintiffs' favor* for purposes of tolling the statute of limitations." Gov't Resp. at 8. Instead, the cases plaintiffs cite are examples of knowledge imputed *against* landowners to begin the statute of limitations. *See, e.g.*, *Ingrum v. United States*, 560 F.3d 1311, 1315 (Fed. Cir. 2009) (affirming the statute of limitations was not suspended during the period before the owner saw the alleged taking because the government's actions on the landowner's property were open and notorious); *Yankton Cnty., S.D. v. United States*, 135 Fed. Cl. 620, 630–31 (2017) (finding a landowner's erosion-based Fifth Amendment claim was barred by the statute of limitations based on publicly-available data and reports which demonstrated the stabilization of the plaintiff's claim); *Cent. Pines Land Co. v. United States*, 61 Fed. Cl. 527, 534 (2004) (limiting tolling of the statute of limitations *only* to situations where a landowner can prove they did not have sufficient opportunity to discover the facts giving rise to the claim); *McDonald v. United States*, 37 Fed. Cl. 110, 116–17 (1997) (finding the statute of limitations began running when flooding damage to the land stabilized); *Catellus Dev. Corp. v. United States*, 31 Fed. Cl. 399, 407 (1994) (finding plaintiff who owned land the military had used as part of live fire training failed to establish specifically when the taking accrued, and therefore the court lacked jurisdiction over the claim). At oral argument, plaintiffs conceded they do not have "any example cases in which knowledge was imputed on a landowner in their favor." Tr. at 110:4–7.

As the Court addressed *supra*, the doctrine of justifiable uncertainty affects when a takings claim statute of limitations runs, which is jurisdictional in nature as a condition on the government's waiver of sovereign immunity. *Martinez*, 333 F.3d at 1316. A waiver of the government's sovereign immunity "will be strictly construed . . . in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192 (1996); *see also MacLean v. United States*, 454 F.3d 1334, 1336 (Fed. Cir. 2006) (quoting *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1576–77 (Fed. Cir. 1988)) ("In the Court of Federal Claims, the statute of limitations 'is a jurisdictional requirement attached by Congress as a condition of the government's waiver of sovereign immunity and, as such, must be strictly construed.'"); Tr. at 110:19–23 ("COURT: And the Supreme Court has previously held that waivers of sovereign immunity should always be strictly construed in favor of the sovereign. [PLAINTIFFS]: I understand . . . that has happened."). Further, plaintiffs bear the burden of establishing the court has jurisdiction to hear their claims. *See McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936) (stating plaintiffs must allege in their pleading the facts essential to show jurisdiction). Only requiring landowners point to objective facts in the record for determining whether justifiable uncertainty delays accrual of claims years after the alleged "uncertainty" took place—and independent of landowners' subjective knowledge of the facts—would broaden the government's waiver of sovereign immunity and allow claims from landowners who may be unaware of government mitigation efforts but later seek this court's jurisdiction.[10]  *See Boling*, 220 F.3d at 1372

---

[10] Myriad reasons support courts narrowly construing sovereign immunity waivers, including the difficulty in determining statute of limitations tolling and the intrusive effect courts have on unsettling carefully decided

(distinguishing *Applegate* because plaintiffs in *Boling* were not aware of mitigation plans until after they filed the takings suit); *Mildenberger*, 643 F.3d at 947 (holding plaintiffs' subjective uncertainty about the taking's permanency was not objectively justifiable); *see also Lane*, 518 U.S. at 192 (construing strictly waivers of sovereign immunity in favor of the sovereign).

### 3. Decisions Imputing Knowledge on Landowners Do Not Warrant Reconsideration of the Court's 19 January Order

This Court must strictly construe waivers of sovereign immunity in favor of the government and plaintiffs fail to provide any examples, precedential or otherwise, of a court imputing knowledge to a landowner in a way which limits or tolls jurisdictional requirements from affecting their claims. Plaintiffs have not shown, therefore, the language in the Court's 19 January Order stating plaintiffs need to demonstrate actual knowledge of the government's proposed and actual mitigation activities was a clear legal error or manifest injustice "apparent to the point of being almost indisputable." *Pac. Gas & Elec. Co.*, 74 Fed. Cl. at 785, *rev'd on other grounds*, 536 F.3d 1282 (Fed. Cir. 2008). Absent such a showing, plaintiffs' argument in support of its motion for partial reconsideration must fail.

Imputing knowledge to nontraditional landowners who may not be available to testify or ownership entities distant from the land itself may require additional evidence or expert testimony to prove actual subjective knowledge. The Court noted in its 19 January Order: "[a]t any future trial the Court will have to closely examine the specific knowledge landowners had related to the proposed and completed mitigation actions contained in the record and whether these actions resulted in justifiable uncertainty on the part of the landowners as to the permanency of the government's taking." 19 January Order at 63 (first citing *Henderson Cnty.*,

---

congressional waivers. *See, e.g.*, Loren A. Smith, *Why a Court of Federal Claims*, 71 Geo. Wash. L. Rev. 773, 778–779 (2003) ("When a court or jury takes money from the government there is a different but related problem, because that money belongs to the whole of the people. . . . If judges or juries may effectively appropriate public money in favor of some private litigants against the government, are we not discarding the basis of American democratic liberty by allowing nondemocratic spending and taxation?"); Gregory C. Sisk, *A Primer on the Doctrine of Federal Sovereign Immunity*, 58 Okla. L. Rev. 439, 442 (2005) (quoting Harold J. Krent, *Reconceptualizing Sovereign Immunity*, 45 Vand. L. Rev. 1529, 1530 (1992)) ("[S]overeign immunity . . . derives not from the infallibility of the state but from a desire to maintain a proper balance among the branches of the federal government, and from a proper commitment to majoritarian rule."). Many scholars and cases discuss uncertainties caused by broad waivers of sovereign immunity regarding real property takings. *See* Richard A. Epstein, *Past and Future: The Temporal Dimension in the Law of Property*, 64 Wash. U.L.Q. 667, 667–68 (1986) ("The major cost associated with the passage of time is uncertainty. . . . [U]ncertainty creates a cost that greater certainty could reduce. In addition, any increase of uncertainty increases the scope of the discretion lodged in both public and private hands. That discretion spurs private litigation that generates high administrative costs and high error rates. The passage of time therefore creates pressures, both public and private, to take steps to ensure that legal rights and duties do not depend on events that are remote from the present, either past or future."); *Id.* at 684 ("The hard question thus raised is whether the simple passage of time at some point becomes so powerful an obstacle to recovery that suits should be barred notwithstanding the equitable considerations. . . . I believe that it should."); Gregory C. Sisk, *The Continuing Drift of Federal Sovereign Immunity Jurisprudence*, 50 Wm. & Mary L. Rev. 517, 563 (2008) (footnote omitted) ("Articulated as a 'strong presumption against the waiver of sovereign immunity,' the principle of strict construction applies most readily to these core questions of whether the government is amenable to suit based upon a particular theory of liability and whether the government should be subject to the remedy requested. Accordingly, the presumption that a statutory waiver is narrow in scope is at its strongest when the matter at issue is . . . the availability of a particular remedy . . . .").

60 Fed. Cl. 748; and then citing *Kingsport Horizontal Prop. Regime v. United States*, 53 Fed. Cl. 556 (2002)).  As discussed by way of hypothetical example during oral argument, counsel for the government agreed a letter sent from the Corps would affirmatively put plaintiffs on notice of the government's mitigation activities, but only if "it was received *and* understood by [plaintiffs.]" Tr. at 118:11–13 (emphasis added); Tr. at 118:9–11 ("[The government] think[s] it is relevant to know what the [p]laintiffs contemporaneously said and thought and heard and knew.").  Further, government counsel added:  "indicat[ing] that [plaintiff] was contemporaneously aware of what was being promised" "would satisfy the [p]laintiffs' actual knowledge."  Tr. at 119:2–5.

## VI.  Conclusion

The Court's 19 January Order does not contain clear error or manifest injustice warranting reconsideration.  For purposes of statute of limitations accrual, determining justifiable uncertainty is a two-part inquiry:  (1) whether a landowner's *subjective* knowledge of the government's promises or actions caused the landowner to be uncertain about the taking's permanence; and (2) whether government promises or actions caused the landowner an *objectively* reasonable uncertainty of the taking's permanence.  Accordingly, the Court **DENIES** plaintiffs' motion for partial reconsideration of the Court's 19 January Opinion and Order.  As agreed by counsel for the parties, the Court will hold a telephonic status conference on **2 November 2021 at 2:30 p.m. (EDT)** to discuss discovery deadlines in this case going forward.

**IT IS SO ORDERED.**

s/ Ryan T. Holte
RYAN T. HOLTE
Judge